IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EMMANUEL IWOBI, § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 4:17-CV-02347 |
| § | |
| ADMINISTRATOR, LYONDELLBASELL § | |
| RETIREMENT ADMIN., *et al.*, § | |
| *Defendants.* § | |

## ORDER

This is a suit under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant LyondellBasell Retirement Plan Benefits Administrative Committee ("the BAC") has filed a Motion for Summary Judgment (Doc. No. 22), and Plaintiff Emmanuel Iwobi ("Plaintiff") has filed his opposition thereto (Doc. No. 24). The Court having considered the merits of both hereby grants the BAC's Motion.

**I.      Procedural History**

On August 1, 2017, Plaintiff filed his Complaint against three purported defendants: (a) Administrator, LyondellBasell Retirement Administration, (b) the BAC (incorrectly named as the Benefits Administration Committee), and (c) "Regional HR Rep. Basell USA Inc."[1] The BAC filed an Answer (Doc. No. 5) and later an Amended Answer (Doc. No. 21). The parties disagree over whether the defendants identified as "Administrator, LyondellBasell Retirement Administration" and "Regional HR Rep. Basell USA Inc" were ever served, a dispute that will be taken up in a separate order.

---

[1] Doc. No. 1 at 2.

The Court has previously denied (Doc. No. 25) a Motion for Summary Judgment (Doc. No. 14) filed by Plaintiff. The BAC now moves for summary judgment as to all of Plaintiff's claims.

**II.    Statement of Facts**

Most of the factual background is not in dispute. Plaintiff was approximately 33 years old when he began working for Basell USA Inc. ("Basell USA"), a predecessor of LyondellBasell Chemical Company, in March of 1988.[2] He was a laboratory operator in its Lake Charles, Louisiana location.[3] In early 2002, according to Plaintiff's allegations, Plaintiff injured his neck and back while still employed by Basell USA, and he thereafter filed for workers' compensation.[4] Basell USA denied that there was any incident or accident while Plaintiff was in the course and scope of his employment resulting in a disability of any type and claimed that even if such an incident had occurred, any alleged injury resulting from it did not disable Plaintiff from performing his job.[5] Therefore, Basell USA claimed Plaintiff was not entitled to workers' compensation, medical benefits, or indemnity benefits.[6] The parties settled their dispute in July 2003, and in a Joint Petition for Approval of Compromise filed with the Louisiana Department of Employment & Training, the parties acknowledged that Basell USA's position was that Plaintiff had been and remained capable of employment and earning wages equal to those he earned while employed with the company.[7] The parties further acknowledged that the compromise settlement was being

---

[2] Doc. No. 1 at 3.
[3] *Id.*
[4] Doc. No. 22, Ex. A-3 at BAC00037–46.
[5] *Id.*
[6] *Id.*
[7] *Id.*

2

"entered into solely for the purposes of avoiding litigation of these proceedings, [and] is not an admission of liability . . . ."[8]

Plaintiff's employment with Basell USA terminated on April 14 or 15, 2002.[9] After his termination, Plaintiff moved to Houston.[10] He also applied for Social Security disability benefits, but his application was denied.[11] Subsequently, he went to work for the Texas Department of Health and Human Services in Houston.[12]

In July 2015, at the age of 60, Plaintiff applied to the claims administrator, LyondellBasell Retirement Administration, for retirement benefits, and Plaintiff began to receive reduced (early) retirement benefits in July or August 2015 in the amount of $516.84 per month.[13]

At some point before May 25, 2016, most likely in late April,[14] Plaintiff made a claim for pension disability benefits.[15] On May 25, 2016, the claims administrator denied Plaintiff's claim for pension disability benefits.[16] In its letter denying the claim, the claims administrator wrote:

> If you would like to appeal this decision, please mail in the following documents:
>
> A letter stating you wish to appeal this decision.
>
> Documentation proving you qualified and were awarded a Disability Retirement Benefit from the Basell Pension Plan at your time of disability.
>
> Your Social Security Disability Award letter.
>
> Until the above documents have been received and reviewed, your request for a disability pension will remain denied.[17]

---

[8] *Id.*
[9] *Id.* at BAC00105; Doc. No. 1 at 3.
[10] Doc. No. 1 at 3.
[11] *Id.*
[12] *Id.*
[13] Doc. No. 22, Ex. A-3 at BAC00103–06.
[14] *See id.* at BAC 00029. In part for ease of reference, the Court will accordingly treat this claim as one occurring in April 2016.
[15] *See id.* at BAC00019.
[16] *Id.*
[17] *Id.*

In June 2016, Plaintiff appealed the decision, and in his appeal documentation, he sent the claims administrator—for the first time—a copy of a Social Security Administration Notice of Award showing that Plaintiff was awarded Social Security disability benefits beginning in May of 2007.[18] Plaintiff was then granted pension disability benefits retroactive to May 1, 2016.[19] In addition to these retroactive benefits, Plaintiff's monthly benefit increased to $794.89.[20]

In December 2016, Plaintiff sent another demand letter to the claims administrator requesting pension disability benefits retroactive to October 2008, when Plaintiff now claimed that he first sought pension disability benefits from Basell USA.[21]

Treating this demand letter as a second appeal, in January 2017 the BAC met and considered Plaintiff's second appeal.[22] In a February 2017 letter, the BAC informed Plaintiff of its final determination denying his appeal.[23] The letter informed Plaintiff that (a) the BAC had no record of any request by him to commence any benefits under the pension plan before 2015; (b) the BAC was not made aware of his disability until he notified it in April 2016; and (c) he was awarded retroactive pension disability benefits effective as of the date he informed the BAC of his disability.[24] As such, Plaintiff's request for further retroactive benefits was denied.[25]

---

[18] *Id.* at BAC00014–18.
[19] *See id.* at BAC00029; *see also id.* at BAC00025. The BAC's briefing relating to this part of the chronology is somewhat contradictory. The BAC states that the claims administrator first received Plaintiff's Social Security records in June 2016, but the BAC also states that "the first time Plaintiff demonstrated to [the claims administrator] (via his social security records) that he was disabled was late April 2016." (Doc. No. 22 at 11–12). Perhaps the BAC means to say that Plaintiff filed a claim for pension disability benefits in April 2016 but only provided the relevant records in June 2016, whereupon Plaintiff was awarded benefits retroactively to the beginning of May *as if* Plaintiff had provided the Social Security records with his original April claim. Since Plaintiff received pension disability benefits retroactive to the beginning of May, however, Plaintiff received the retroactive benefits as of the earlier of the two possible times that he provided the Social Security records, so any discrepancy is immaterial from his vantage point.
[20] Doc. No. 1 at 3.
[21] Doc. No. 22, Ex. A-3 at BAC00021–23.
[22] *Id.* at BAC00024–29.
[23] *Id.* at BAC00029.
[24] *Id.*
[25] *Id.*

In March 2017, Plaintiff sent the BAC additional letters with documentation in support of his claim for pension disability benefits retroactive to October 2008.[26] One such document appeared to be a partially completed application for retirement pension, which Plaintiff claimed he completed and returned to Basell USA back in October 2008.[27] That document will be discussed in more detail below.

In an April 2017 letter, the BAC confirmed receipt of the additional materials Plaintiff provided in March 2017 in furtherance of his claim but informed him that the BAC would not change its final determination.[28] It further informed Plaintiff that even if the additional materials had been submitted in a timely fashion, they would not likely have changed its decision, as the BAC had no record of receiving Plaintiff's completed application for benefits back in 2008, and it was "unreasonable to expect the Plan to provide a retroactive pension back to 2008 when [Plaintiff] made no efforts from 2008 to 2015 to commence [his] benefits."[29]

Plaintiff ultimately filed this lawsuit claiming an entitlement to pension disability benefits as of 2002.

The plan contains the following provisions regarding how the plan is to be interpreted and administered:

> **11.4 Benefits Administrative Committee: General Administrative Powers and Duties.** As part of its overall administrative responsibility for the Plan, but subject to any contrary determination by the Board of Directors of Lyondell Chemical Company, *the Benefits Administrative Committee has exclusive responsibility for general Plan administration*, according to Plan terms and provisions, *and shall have all discretion and powers necessary to accomplish its purposes, including, without limit, the right, power, authority and duty*:

---

[26] *Id.* at BAC00007–13; 00030–47.
[27] *Id.* at BAC00009.
[28] *Id.* at BAC00048.
[29] *Id.*

5

> A. to make nondiscriminatory rules, regulations and bylaws to administer the Plan that are not inconsistent with the Plan terms and provisions;
>
> *B. to construe and interpret all Plan terms, provisions, conditions and limits and the Benefits Administrative Committee's construction and interpretation shall be final, conclusive and binding on all persons or entities;*
>
> C. to correct any defect, to supply any omission, or to reconcile any inconsistency that may appear in the Plan in the manner and to the extent the Benefits Administrative Committee deems necessary or appropriate and the Benefits Administrative Committee's judgment in these matters shall be final, conclusive and binding on all persons and entities;
>
> *D. to decide all questions of eligibility of employees to become Participants, to determine the amount, manner and time of payment of any Plan benefits, including all findings of facts necessary to make those decisions and determinations, and to prescribe procedures to be followed by distributees to obtain benefits;*
>
> E. to determine all controversies relating to Plan administration, including without limit: (i) differences of opinion arising between the Company or any subsidiary or affiliate and the Trustee or a Participant, or any combination thereof and (ii) any questions the Benefits Administrative Committee deems advisable to determine in order to promote nondiscriminatory Plan administration for the benefit of the Participants and beneficiaries;
>
> *F. to determine any person's right to a benefit* and to afford any person dissatisfied with that determination the right to a full and fair review according to the provisions of section 11.8 . . . .[30]

While perhaps not ultimately controlling, the two main disputes set out by the pleadings are: (1) if and when Plaintiff became disabled and (2) whether he filed a completed application for pension disability benefits in 2008.

---

[30] Doc. No. 22, Ex. A-2 § 11.4 (emphasis added).

### III. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The nonmovant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

### IV. Controlling Law Concerning ERISA Review and Summary Judgments

Under Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), a person denied ERISA benefits may file a civil suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Supreme Court has held that the denial of benefits should be reviewed by the district courts using a "*de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan*." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)

(emphasis added). The plan in question, as quoted above, specifically delegates to the administrator discretionary authority and thus falls under the *Firestone* exception.[31]

"Where a plan grants the administrator discretion to determine claims for benefits, claimants may recover under ERISA *only* if the administrator's rejection of their claim was an abuse of discretion." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006) (emphasis added). As such, Plaintiff's claim for denial of benefits should be reviewed for an abuse of discretion, and Plaintiff is only entitled to recover under ERISA if the BAC abused its discretion when it denied his claim for more than 13 years of retroactive pension disability benefits. Plaintiff has agreed with the BAC that the abuse-of-discretion standard is the appropriate one to apply here.[32]

The Court finds an abuse of discretion "only where 'the plan administrator acted arbitrarily or capriciously.'" *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Baptist Mem'l Hosp.—DeSoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 296 (5th Cir. 2010) (per curiam) (quoting *Meditrust*, 168 F.3d at 215). The plan administrator's decision must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299

---

[31] Several states, including Texas, have passed statutes prohibiting such clauses. *See* Tex. Ins. Code § 1701.062(a). Some have argued that state statutes that prohibit discretionary clauses are ineffective because they are preempted. The Fifth Circuit, sitting en banc in *Ariana M. v. Humana Health Plan of Tex., Inc.*, declined to address the issue because the insurer did not raise that point. 884 F.3d 246, 248 (5th Cir. 2018). Similarly, this Court need not address the issue, as it has not been raised by the nonmovant in any point of error or argument. Furthermore, this case is not controlled by Texas law, as all of the pertinent contacts favor applying Louisiana law. Louisiana does not have a statute prohibiting discretionary clauses. *Id.* at 248 n.1 ("Twenty-six states, including Texas, have moved to prohibit discretionary clauses either through statute or regulatory action. Louisiana and Mississippi have not taken any such action." (internal citation omitted)).
[32] Doc. No. 19 at 3–4.

(5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). This Court's review of the BAC's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland*, 576 F.3d at 247 (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir.2007)).[33]

"In ERISA cases, courts generally cannot consider evidence outside the administrative record." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 515 (5th Cir. 2010). The "administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300; *see also Anderson*, 619 F.3d at 516 (observing that "[s]ubsequent panels of this court and several district courts within the circuit have wrestled with this language from *Vega*, which could be read to allow claimants to add material to the administrative record long after exhausting their final administrative appeal . . ."); *Colvin v. 88 Bd., Joint Bd. of Trs. for 88 Plan*, No. SA–17–CV–974–XR, 2018 WL 1756738, at *4–5 (W.D. Tex. Apr. 11, 2018) (tracing the treatment of *Vega*'s holding on what constitutes the administrative record and concluding that "[d]espite certain language questioning it in later opinions, *Vega* is an *en banc* opinion that has not been overruled").

---

[33] The BAC "acknowledges that because it is a self-funded employee benefit plan, this Court must weigh if [the BAC] as plan administrator had any conflict of interest as a factor in determining whether there is an abuse of discretion in Plaintiff's benefits denial." Doc. No. 22 at 16 n.5; *see also Holland*, 576 F.3d at 247 ("If the administrator has a conflict of interest, we weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning we take account of several different considerations of which conflict of interest is one." (internal quotation marks omitted)); *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 869 (5th Cir. 2018) (stating that "[t]he district court should have considered this [conflict-of-interest] factor and given the conflict appropriate weight"). Here, Plaintiff has not explained how the Court should consider the potential conflict of interest in the abuse-of-discretion analysis. Plaintiff has also not adduced any evidence showing the import of the conflict in his case. The Court finds that, in the context of the overall evidence in this case, any conflict of interest is not entitled to significant weight in the abuse-of-discretion inquiry.

The procedural aspects of resolving this case are well established. "Standard summary judgment rules control in ERISA cases." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009)).

The manner in which the actual plan is interpreted is also well-established:

> "Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation" of policy provisions at the heart of this dispute. *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir.2004). "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Id.* We "interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (internal quotation marks omitted). "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Id.*

*Id.* at 331.

## V. Discussion

Plaintiff has pleaded four causes of action against the BAC. He alleges that it: (1) improperly denied him retroactive pension disability benefits from 2002–2015; (2) violated ERISA's disclosure requirements; (3) breached its fiduciary duty to keep him informed; and (4) failed to provide requested information.

The BAC has denied these allegations and moved for summary judgment on all four claims, thus putting the burden on Plaintiff to establish an issue of material fact. The Court will address the claims (Counts 2–4) regarding ERISA compliance first, and it will then address the core of Plaintiff's grievance (Count 1).

### A. Breach of Fiduciary Duty, Duty to Disclose, and Duty to Provide Information

Section 404(a)(1) of ERISA, codified at 29 U.S.C. § 1104(a)(1), imposes fiduciary duties on plan administrators like the BAC. Section 502(c)(1) of ERISA, codified at 29 U.S.C. §

10

1132(c)(1), provides that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant . . . within 30 days after such request may in the court's discretion be personally liable . . . in the amount of up to $100 a day from the date of such failure or refusal . . . ."

29 C.F.R. § 2560.503–1(h)(2) sets forth standards for providing "a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination." These standards include that the claims procedures must "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(h)(2)(iii).

While it is somewhat difficult to determine the main thrust of Plaintiff's argument in this regard, it is clear that Plaintiff thinks he was disabled in 2002 and that the BAC owed him certain duties. The BAC, however, never received a claim for pension disability benefits prior to 2016.[34] It made no decisions regarding pension disability benefits until May of 2016, when it denied Plaintiff's claim.[35] Plaintiff appealed this decision and offered for the first time as evidence the fact that the Social Security Administration had deemed him entitled to disability benefits in 2007. Plaintiff was then granted pension disability benefits retroactive to May 1, 2016—the first of the month following Plaintiff's initial claim for disability benefits in or around April 2016. Consequently, once it had received evidence that actually supported the disability claim, the BAC acted appropriately. There is no breach of fiduciary duty by the BAC in the manner in which it handled this claim.

---

[34] There is a factual dispute about an October 2008 exchange that the Court will discuss below.
[35] It should be noted that in July 2015, having achieved 60 years of age, Plaintiff applied for and received retirement benefits.

There is also no issue of material fact with respect to Plaintiff's claims. Plaintiff has not shown that the BAC failed to inform him of any event or change about which ERISA Section 404(a)(1) requires disclosure. Plaintiff has not shown by competent summary judgment evidence that the BAC did not keep adequate records or at any point failed to provide him with any requested information per the plan or ERISA law. Furthermore, Plaintiff has not shown any disputed issue of material fact as to how any of these so-called breaches of ERISA caused him harm.

Plaintiff claims he was not provided with certain requested information. Although not pointed out in his Response to the Motion, apparently in a June 2017 letter entitled "Request for Reasonable Access to Information," Plaintiff sought (a) all letters, emails, and records used to notify Plaintiff of his "eligibility for Medical disability retirement pension benefit[s], from April 15th 2002 to December 30th 2014"; (b) any communications from Plaintiff regarding his "Request for Medical disability retirement pension benefit," including emails, letters, and an "Application for pension submitted from April 15th 2002 to December 30th 2008"; and (c) "Audio recordings made between [Plaintiff] and your office during [Plaintiff's] application for benefit[s] in the period of January 1st 2015 to June 30th 2015."[36] It is not clear to this Court what, if anything, Plaintiff received in reply to this request. Nevertheless, any alleged failure by the pension plan to provide Plaintiff with the alleged claims-related items sought in his June 2017 letter does not give rise to a statutory penalty against the plan administrator, the BAC, for non-compliance under Section 502(c) of ERISA. *See Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 859 (S.D. Tex. 2016) (stating that 29 C.F.R. § 2560.503–1(h)(2), "like the statutory provision it implements (ERISA § 503), imposes claim procedure requirements on the 'plan,' not the plan administrator" and that "[t]his distinction is critical because ERISA § 502(c)

---

[36] Doc. No. 22, Ex. B-3.

authorizes a statutory penalty only for failures or refusals 'to comply with a request for any information which such *administrator* is required by this title to furnish'"). Furthermore, no damage could have resulted from ignoring this request, as this lawsuit was filed six weeks later.

As such, Plaintiff's claims fail as a matter of law.

**B.      The Award of Pension Disability Benefits**

The real crux of this dispute is whether the BAC properly awarded pension disability benefits beginning on May 1, 2016, or whether those benefits should have been awarded beginning in 2008, or even in 2002. It should be noted that Plaintiff and his employer, Basell USA, had a dispute over Plaintiff's alleged disability, its cause, and his inability to perform future work. That dispute was eventually settled with Basell USA paying $40,000 to settle the claim and Plaintiff executing a broad release in which he waived any and all claims of virtually every kind.[37]

By the time of this settlement, Plaintiff had already moved to Texas. He then applied for Social Security disability benefits and was denied. Sometime after this denial, Plaintiff was employed by the Texas Department of Health and Human Services in Houston. According to the documents filed by Plaintiff, in February 2008 the Social Security Administration found that he was disabled and entitled to benefits as of May 2007. Sometime in or around October 2008, Plaintiff contacted the personnel office of LyondellBasell and inquired about his available benefits.[38] The Regional HR Representative responded with a letter on October 9, 2008, that, in pertinent part, reads:

---

[37] Doc. No. 22, Ex. A-3 at BAC00037–46.
[38] In his briefing (Doc. No. 19) on his own Motion for Summary Judgment, Plaintiff included several emails from July and October 2008 as attachments. The emails are arranged in such a fashion that it is difficult to determine how they are related to one another and whether they are part of a larger email thread. The emails appear to show that Plaintiff requested that information be mailed to him regarding an application for pension disability benefits. In one email dated July 15, 2008, Plaintiff requested information on how to file for pension benefits, stating that he was "totally disabled" and "currently receiving Social Security Disability Income." Even assuming these emails are admissible, however, the evidence shows that the earliest time Plaintiff applied for pension disability benefits was April 2016. He may have

13

Dear Mr. Iwobi:

Per your request, enclosed is a copy of your deferred vested benefit calculation to begin effective November 1, 2008. Also enclosed are the following forms which will you [sic] need to complete in order to begin receiving your benefit.

> Application for Pension *(complete highlighted areas)*
> Postretirement Survivor Benefit Election Form *(must complete)*
> Spousal Consent Form *(required if No Survivor Benefit is elected)*
> Federal Income Tax Election Form *(must complete)*
> Direct Deposit Authorization Form *(optional, but recommended)*
> Return envelope for your convenience

Please return your application and required forms to me by October 31, 2008. In addition, if you choose a surviving spouse option, you must provide a copy of your spouse's birth certificate or a copy of your marriage certificate. If all of the required forms are returned by the above date, your first payment will be on November 30, 2008, and future installments will be payable on the last business day of each month thereafter.[39]

It is clear that at least the individual sending this letter did not understand that Plaintiff was trying to apply for pension disability benefits. Indeed, the calculations provided to Plaintiff were clearly denoted as retirement benefits and demonstrate the amount of retirement he could claim if he retired early (i.e., on November 1, 2008) and the formula that set out the various early retirement deductions.[40]

What follows is somewhat disputed. Plaintiff states that he applied for pension disability benefits and encloses an application he dated October 22, 2008.[41] The BAC claims that it never received any application and that the copy produced by Plaintiff is not complete. The latter claim is clearly true. The application supplied by Plaintiff to the Court has specific boxes for each kind

---

requested and received information on how to apply in 2008, but there is no evidence that he applied for pension disability benefits until 2016.
[39] Doc. No. 22, Ex. A-3 at BAC00022.
[40] *Id.* at BAC00023.
[41] *Id.* at BAC00009.

of pension one is requesting.[42] Plaintiff did not check the disability box.[43] In fact, he did not check any box[44]:

| Please Check Type of Pension | | |
|---|---|---|
| ☐ Retirement | ☐ Disability Retirement[1] | ☐ Survivor |
| ☐ Early Retirement | ☐ Deferred Retirement (see below) | ☐ Reduced early retirement |

This Court will assume that Plaintiff filed this application in 2008. Even with this assumption, the application does not request pension disability benefits. This conclusion is reinforced by the fact that from October 22, 2008, to April 2016, Plaintiff never once questioned or followed up on what he now claims was a 2008 disability benefits request. Importantly, in 2015, having reached the age of 60, he applied for and received retirement benefits, yet throughout that process he never once suggested that he should have been receiving or was, even at this late date, requesting disability benefits.

This Court finds that the BAC did not abuse its discretion. First, with respect to the period between 2002 and September 2008, Plaintiff had never applied for pension disability benefits and was working for at least part of this time. It was not until February 2008 that the Social Security Administration found him to be disabled.[45] Second, with respect to the period from April 2016 when Plaintiff first applied for pension disability benefits through June 2016 when he provided proof and was then awarded disability benefits retroactively to May 1, 2016, the Court finds no abuse of discretion.

Finally, with respect to the period between October 2008 and March 2016, the Court finds that the BAC did not abuse its discretion. There is *no* evidence that Plaintiff applied for pension

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at BAC00015.

15

disability benefits. The application Plaintiff attaches to support this claim does not apply for such benefits. It in no way informs the BAC that it should provide or consider awarding disability payments to Plaintiff. Furthermore, for more than seven years (including at least one period of time when he was applying for retirement benefits under the same benefits package), he never once inquired about his alleged disability claim, complained about the BAC's apparent inaction, or in any other way suggested to any person or entity that he should have been receiving disability payments.

The BAC in none of the instances set out above acted arbitrarily or capriciously. Its ultimate decision not to award back benefits for over a decade is completely supported by the evidence. Initially (2002–September 2008), Plaintiff was either not disabled or he had not applied. In the interim period (October 2008–March 2016), he neither applied for pension disability benefits nor did he provide any proof of disability. Finally, in the last phase when he finally applied (April 2016), he did not initially supply proof, but when he did (June 2016), the BAC awarded him benefits backdated to the first of the month following his original, unsupported application. This Court finds such conduct to be reasonable and certainly not arbitrary. The Court therefore grants the BAC's Motion for Summary Judgment.

## VI. Conclusion

The Court grants Defendant's Motion for Summary Judgment (Doc. No. 22) and holds that Plaintiff shall take nothing from the BAC.

Signed at Houston, Texas, this 6th day of March, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE